IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| **LAZEREK AUSTIN, #K77091,** ) | |
| ) | |
| **Plaintiff,** ) | |
| vs. ) | Case No. 3:21-cv-00269-SMY |
| ) | |
| **ROBERT RHOADES,** ) | |
| **SGT. ROYSTER,** ) | |
| **LT. WHITOFF,** ) | |
| **C/O MORRIS,** ) | |
| **JOSHUA SCHOENBECK,** ) | |
| **MAJOR ROWLAND,** ) | |
| **ANTHONY WILLS, and** ) | |
| **R. JEFFERYS,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Lazerek Austin, an inmate of the Illinois Department of Corrections ("IDOC") currently incarcerated at Menard Correctional Center ("Menard"), filed the instant lawsuit pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. This case is now before the Court for preliminary review of the Complaint under 28 U.S.C. § 1915A. Any portion of the Complaint that is legally frivolous, malicious, fails to state a claim for relief, or requests money damages from an immune defendant must be dismissed. 28 U.S.C. § 1915A(b).

### The Complaint

Plaintiff makes the following allegations in the Complaint (Doc. 11): After days of cold temperatures, cold trays, and no time out of cell, phones, or shower in north two cell house, several prisoners started small fires and caused flooding on February 17, 2021. Correctional officers Rhoades and Morris responded with a fire extinguisher. The correctional officers and prisoners engaged in yelling obscenities at each other. When Rhoades reached Plaintiff's cell, they engaged

in a heated argument and Rhoades sprayed Plaintiff in the face and body with the fire extinguisher. Plaintiff's cell became engulfed in the chemical agents from the fire extinguisher causing him to choke and gasp for air. He stuck his head in the toilet because his eyes were burning and his skin itched. Once the air started to clear, Plaintiff could see other officers including Lt. Berner standing at his cell. They could see that his body, face, and cell were covered with the remains from the fire extinguisher. Lt. Berner stated Plaintiff needed to be taken to medical. Plaintiff refused to leave his cell unless a camera was brought to record his out of cell movements. He told Lt. Berner he wanted documentation because Menard officials have a long history of beating prisoners after an altercation with staff and he feared for his safety. IDOC Director Jefferys and Wills are aware of his practice and have done little to stop the staff on inmate beatings. Although the small fires had been extinguished, correctional officers sprayed several cells with water, including Plaintiff's cell.

Several tactical officers came to Plaintiff's cell with a camera and took him to medical. He was then taken to an office and handcuffed behind his back to a stool. Sgt. Royster and Lt. Whitoff entered the office, accused Plaintiff of assaulting staff, and began striking Plaintiff in the face and body while stating racial slurs. During the assault, Plaintiff yelled for help and for them to stop. Plaintiff was not allowed to see medical for the injuries he suffered as a result of the assault, and instead, was left handcuffed to the stool. He heard tact officers assaulting other prisoners.

Plaintiff was moved from the office to a cell that reeked of pepper spray, causing him to sneeze and cough. The walls, toilet, sink, and mattress were covered in pepper spray. He was ordered to place his hands through the chuck hole to be uncuffed and got pepper spray on his skin, causing his arms and hands to burn. He complained to the officers that the pepper spray was choking him and burning his skin. He asked to be moved to a different cell. The officers laughed

and told him he was choking from all the fires that had been set.  Plaintiff was left in the cell with nothing but the clothes he was wearing.  He used his shirt to try to clean the pepper spray.  Sgt. Royster came to his cell and told him to stop complaining about not being allowed to see medical for his injuries, his cell being contaminated with pepper spray, and not having his property.  Sgt. Royster stated air freshener had been sprayed in the cells and that they had "f***ed up."  With no light, no property, and using his shirt as a towel, Plaintiff wiped the cell down as best he could but not enough to clear the pepper spray.  He had to lay on a mattress covered in pepper spray, causing his body to itch and burn.

The next day, Plaintiff received a disciplinary ticket authored by Rhoades charging him with assault and dangerous disturbances.  The report alleged Plaintiff threw urine on Rhoades and punched him in the left temple.  There is a space on the disciplinary report to request witnesses to be interviewed in defense of the prisoner.  Plaintiff listed his neighbor and requested that the camera near his cell be reviewed.

Plaintiff is prescribed psychotropic medications.  Warden Wills and Major Rowland have enacted a policy of denying some prisoners their medication unless they submit to a humiliating and degrading act of being handcuffed behind their backs, kneeling, and allowing the nurse to place medication and liquid in their mouths.  Prisoners are not allowed to verify medications or liquids before taking them.  It is an arbitrary policy that is not posted in any rule book or memorandum made available to prisoners.  It is not necessary to maintain security and often officers made cruel and degrading remarks to prisoners who are subject to this policy.

When the medication nurse came to Plaintiff's cell on February 22, 2021, Correctional Officer Morris asked Plaintiff if he was going to get on his knees like a bitch to get his drugs.  Plaintiff did not receive his medication that day.  Also, C/O Morris cut off Plaintiff's water and

refused to feed him on that day.

Plaintiff went before the Adjustment Committee chaired by Lt. Schoenbeck on February 23, 2021 and pled not guilty. He told them the ticket was bogus and was written to cover up Rhoades assaulting Plaintiff by spraying him with the fire extinguisher. He asked the committee to review the camera footage and interview his neighbor who could attest that Rhoades assaulted Plaintiff as opposed to Plaintiff assaulting Rhoades. He also told Lt. Schoenbeck that C/O Morris was a "fake" witness for Rhoades and had been cutting off his water and refusing to feed him. Lt. Schoenbeck promised he would view the video, interview his witness, and get back to him.

Later that day, Plaintiff was able to obtain a pen and paper from prisoners in the neighboring cell. He was still without any of his property or hygiene items. C/O Morris again cut off his water and refused to feed him. Plaintiff beat on his cell door to call for a sergeant. C/O Morris taunted Plaintiff and told him he would not be kicking long because he knew he was hungry. When the medication nurse came, C/O Morris asked Plaintiff if he would be getting on his knees today. Plaintiff was refused his medication again.

Unable to obtain medical treatment, medication, property, and grievances, on the evening of February 23, 2021, Plaintiff wrote out a 1983 civil complaint. With the help of another prisoner, he also wrote out two emergency motions. Because Rhoades was the officer assigned to pick up mail, Plaintiff gave his documents to a neighboring cell prisoner to place in the mail, which he did.

The next day Major Rowland and a mental health worker conducted a walk through. Plaintiff told Major Rowland that since February 17, 2021, he had no property, no light, had been denied medical, and that C/O Morris was cutting off his water and refusing to feed him. Major Rowland walked away. Plaintiff began beating on his cell door calling Major Rowland's name to get him to return. Major Rowland came back and told Plaintiff that after what the prisoners did

on February 17, 2021, they would not be getting anything from him. Plaintiff requested a crisis member/team because he was feeling unstable and did not want to hurt himself or others. Major Rowland told the mental health worker that Plaintiff was okay and they walked off. Plaintiff then asked the gallery officer for a crisis team and he stated he would see what he could do. Later that day, the officer told him he contacted mental health and they would refer him to his mental health professional.

C/O Morris cut off Plaintiff's water, refused to feed him, and denied him medication again on February 24 and 25, 2021. C/O Morris also refused to give Plaintiff his mail. Plaintiff again banged on his cell door for a sergeant but no one came.

Plaintiff saw a mental health professional on February 28, 2021 for a suicide prevention assessment. He explained to her that he had been beaten, refused medical, denied medication, had no property, hygiene items, or light, and C/O Morris was cutting off his water and refusing to feed him. She promised to speak with correctional officers about the issues. As he was leaving the interview room, Sgt. Royster told him to go ahead, do him a favor, and kill himself. Sgt. Royster also stated he did not care about Plaintiff "crying" to mental health about his property and that prisoners should have thought of their property before they set fires.

C/O Morris cut off Plaintiff's water, refused to feed him, and denied him medication again on March 1, 2021. The next day, Plaintiff told the shift lieutenant about C/O Morris's actions. The lieutenant promised to speak with C/O Morris about the issues. Since March 2, 2021, Plaintiff has no longer had a problem with C/O Morris cutting off his water or refusing to feed him. However, he is still being denied his medication on C/O Morris's shift.

Plaintiff wrote a letter to the law library on March 4, 2021 because he had not received his complaint and motions stamped e-filed. The law library responded that they had received

documents from Plaintiff on February 23, 2021, e-filed them, and returned them to Plaintiff the same day, but Plaintiff never received the documents. Also, Plaintiff sent the documents on February 24, 2021.

Plaintiff was served with the Adjustment Committee's findings on March 4, 2021, finding him guilty for the dangerous disturbances and assault of Rhoades. The summary indicates Plaintiff did not request a witness but also indicates the witness Plaintiff requested was not called because he could not see inside Plaintiff's cell. But the witness did not need to be able to see inside the cell to see Rhoades spraying Plaintiff with the fire extinguisher. The committee did not review the camera footage. The summary states mental health reviewed the case and made a recommendation. However, no mental health worker spoke with Plaintiff about the disciplinary report. Wills approved the actions of the Adjustment Committee.

Because Plaintiff was found guilty of a rule violation, he cannot earn segregation cuts for two months following the ticket. Plaintiff has been in segregation since June 2020 and was scheduled to get out in September 2021. Due to Plaintiff's positive behavior, he had been receiving segregation cuts on average of 30 days every month. He could have been out by May 2021 or sooner. In addition to the COVID-19 restrictions, in segregation, Plaintiff is confined to his cell 24 hours a day with the exception of one and a half hours of yard a week and three 10-15 minutes showers a week. All meals are served in the cell. Because he is in segregation, every time he leaves the cell he is subject to a degrading and humiliating strip search. He will be subject to this search for an additional three months – until December 2021. The cell is small and limits his ability to exercise. He does not have a television or radio. He is only allowed one 20-minute phone call about every three weeks as opposed to daily calls in general population. Due to the policy of not allowing mental health prisoners their medication without submitting to the degrading

and humiliating act of having medication placed in their mouths while handcuffed behind the back and kneeling on the floor, he has not had his medication. As a result, his mental health is deteriorating.

Plaintiff received some of his property on March 4, 2021 and his light was fixed. This was the first time he was able to brush his teeth, change his underwear, and clean his body since February 17, 2021.

Sgt. Royster told Plaintiff on March 9, 2021 that he was aware of his "little lawsuit" and that Plaintiff was only making it harder on himself. At that point, Plaintiff had still not received his complaint and motions back from the law library and it appeared there had been interference with his documents. He drafted a motion for appointment of counsel and sent it to the law library through institutional mail for filing. It was returned stamped e-filed without incident. Based on the notice of electronic filing, it appeared the motion was the only document filed in his case and his original Complaint and two emergency motions were never filed with the Court. Plaintiff then drafted a motion to clarify and filed it with the Court. In response, the Court notified him that it had not received his Complaint or two emergency motions.

Based on the allegations in the Complaint, the Court designates the following claims in the *pro se* Complaint:

| | |
|---|---|
| Count 1: | Eighth Amendment excessive force claim against Rhoades for spraying Plaintiff in the body and face with a fire extinguisher on February 17, 2021 |
| Count 2: | Eighth Amendment excessive force claim against Royster and Whitoff for assaulting Plaintiff on February 17, 2021. |
| Count 3: | Eighth Amendment deliberate indifference claim against Royster and Whitoff for denying Plaintiff's request for medical care after the assault on February 17, 2021. |
| Count 4: | Eighth Amendment claim against Warden Wills and IDOC Director |

7

|  |  |
|---|---|
|  | Jefferys for Menard officials' practice of assaulting prisoners following staff/prisoner altercations which they have knowledge of but have not taken action to stop. |
| Count 5: | Eighth Amendment conditions of confinement claim against Royster and Rowland for denying Plaintiff a change of clothing, hygiene products, cleaning supplies, a usable mattress, and his cell was covered in pepper spray from February 17, 2021 to March 4, 2021. |
| Count 6: | Eighth Amendment deliberate indifference and/or conditions of confinement claim against Morris for depriving Plaintiff of food and water on February 22-25 and March 1-2, 2021. |
| Count 7: | Eighth Amendment deliberate indifference claim against Wills and Rowland for the policy of requiring Plaintiff, a mentally ill prisoner, to submit to a degrading and humiliating act to take his psychotropic medication and not allowing Plaintiff to identify or confirm the medication he is being given. |
| Count 8: | Fourteenth Amendment due process claim against Rowland for a false disciplinary ticket and against Schoenbeck for denying Plaintiff an opportunity to present a defense when he failed to interview Plaintiff's witness or review the camera footage as requested by Plaintiff and against Wills for approving the disciplinary action. |
| Count 9: | Eighth Amendment claim against IDOC Director Jefferys and Warden Wills for the blanket strip search policy for prisoners in segregation. |
| Count 10: | Fourth Amendment claim IDOC Director Jefferys and Warden Wills for the blanket strip search policy for prisoners in segregation. |
| Count 11: | Eighth Amendment deliberate indifference claim against IDOC Director Jefferys, Warden Wills, and Major Rowland for keeping Plaintiff in segregation for extended periods of time under oppressive conditions causing Plaintiff's mental health to deteriorate where they have been put on notice of Plaintiff's condition through personal conversations, letters, grievances, and mental health staff. |

Any claim that is mentioned in the Complaint but not addressed in this Order is dismissed without prejudice as inadequately pled under the *Twombly* pleading standard, including allegations that are

not associated with any specific defendant. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face.").

## Discussion

### Counts 1-2

"Correctional officers violate the Eighth Amendment when they use force not in a good faith effort to maintain or restore discipline, but maliciously and sadistically for the very purpose of causing harm." *Wilborn v. Ealey*, 881 F.3d 998, 1006 (7th Cir. 2018) (internal citations and quotation marks omitted).  Plaintiff's Complaint includes sufficient allegations to proceed on excessive force in Count 1 against Rhoades and in Count 2 against Royster and Whitoff.

### Count 3

The allegations in the Complaint are sufficient to proceed on the Eighth Amendment deliberate indifference claim in Count 3 against Royster and Whitoff for the denial of medical treatment for injuries from the alleged assault. *See Cooper v. Casey*, 97 F.3d 914 (7th Cir. 1996) (failure to obtain medical assistance for an inmate who has been assaulted may constitute deliberate indifference to a serious medical need).

### Count 4

Plaintiff alleges IDOC Director Jefferys and Warden Wills failed to protect him from harm. "Such claims are often rooted in the Eighth Amendment's Cruel and Unusual Punishment Clause, which imposes upon prison officials the duty to take reasonable measures to guarantee the safety of the inmates." *Brown v. Budz*, 398 F.3d 904, 909 (7th Cir. 2005) (internal quotations omitted). "In particular, this duty requires prison officials to protect prisoners from violence at the hands of other prisoners." *Id.*  "To state a failure to protect claim, a plaintiff-inmate must allege that (1) he

is incarcerated under conditions posing a substantial risk of serious harm," and (2) defendant-officials acted with deliberate indifference to that risk." *Id.* Allegations of a generalized risk of violence are not enough to state a claim. *Id.* at 913. Instead, Plaintiff must allege a "tangible threat to his safety or well-being." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008); *Billman v. Indiana Dep't of Corrections*, 56 F.3d 785, 788 (7th Cir. 1995) (discussing distinction between actual and feared exposure to a threat of harm). Plaintiff must demonstrate that he was subject to a substantial risk of future harm that was "so great" that it was "almost certain to materialize if nothing [wa]s done." *Brown*, 398 F.3d at 911.

Plaintiff alleges a long history of assaults on prisoners after an altercation between a prisoner and staff. He also alleges that IDOC Director Jefferys and Warden Wills have exhibited deliberate indifference to, and/or condoned, this violent behavior by staff against prisoners creating an obvious risk of assault. The allegations in the Complaint suggest a pervasive pattern of assaults at Menard that made the risk of assault clear. Whether this pattern and the absence of effective policies, training, and supervision created an "almost certain" risk of assault on Plaintiff remains to be seen. At this early stage, however, the Court will allow Plaintiff to proceed with Count 4 against IDOC Director Jefferys and Warden Wills.

**Counts 5 and 6**

Prison conditions that deprive inmates of basic human needs—food, medical care, sanitation, or physical safety—may violate the Eighth Amendment. *James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). Two elements are required to establish a constitutional violation. First, an objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The second requirement is a subjective

element—establishing a defendant's culpable state of mind, which is deliberate indifference to a substantial risk of serious harm to the inmate from those conditions. *Id.* at 842.

Plaintiff's allegations that he was denied a change of clothing, hygiene products, cleaning supplies, a usable mattress, and his cell was covered in pepper spray are sufficient to proceed on an Eighth Amendment claim for unconstitutional conditions of confinement. Plaintiff alleges he complained to Royster and Rowland about the conditions and they took no action to assist him. Therefore, Count 5 will proceed against Royster and Rowland. Additionally, Plaintiff alleges Morris denied him food and water for seven days. Count 6 will therefore proceed against Morris.

### Count 7

Prison officials and medical staff violate the Eight Amendment's prohibition against cruel and unusual punishment when they act with deliberate indifference to a prisoner's serious medical needs. *Rasho v. Elyea*, 856 F.3d 469, 475 (7th Cir. 2017). To state such a claim, a prisoner must allege facts suggesting that (1) he suffered from an objectively serious medical condition, and (2) the defendant acted with deliberate indifference to his medical needs. *Id.* The alleged policy requiring Plaintiff's medication to be administered while he is handcuffed behind his back and kneeling on his knees does not support a claim of deliberate indifference to serious medical needs. While Plaintiff may find it degrading, unpleasant, humiliating, and embarrassing, not every psychological discomfort a prisoner endures amounts to a constitutional violation. *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003). Count 7 fails to state a claim and will be dismissed.

### Count 8

A false disciplinary ticket will not violate the Fourteenth Amendment if the inmate receives procedural due process in the disciplinary proceedings. *Hanrahan v. Lane*, 747 F.2d 1137, 1140 (7th Cir. 1984). When a plaintiff brings a procedural due process claim under the Fourteenth

Amendment, he must plead facts suggesting the state deprived him of a constitutionally protected interest in "life, liberty, or property" without due process of law. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). A court analyzing this claim in the context of prison disciplinary hearings must consider (1) whether there was a protected interest at stake that necessitated due process protections and (2) whether the disciplinary hearing was conducted in accordance with procedural due process requirements. *Id*. Prison disciplinary hearings satisfy procedural due process requirements where an inmate is provided: (1) written notice of the charge against the prisoner twenty four (24) hours prior to the hearing; (2) the right to appear in person before an impartial body; (3) the right to call witnesses and to present physical/documentary evidence, but only when doing so will not unduly jeopardize the safety of the institution or correctional goals; and (4) a written statement of the reasons for the action taken against the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974); *Cain v. Lane*, 857 F.2d 1139, 1145 (7th Cir. 1988).

Plaintiff received three months in segregation and alleges the conditions in segregation imposed an atypical and significant hardship. This is sufficient at the pleading stage to implicate a protected interest. *Younger v. Hulick*, 482 F.App'x 157, 159 (7th Cir. 2012). He also alleges potential due process violations in the disciplinary proceedings. Therefore, the claim in Count 8 will be allowed to proceed against Rowland and Lt. Schoenbeck.

However, to the extent he seeks to hold Warden Wills accountable for due process violations in the disciplinary proceedings, the facts alleged do not support liability. He does not allege that Wills was involved in the disciplinary hearing. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, the individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (internal quotations and citations omitted).

Signing off on a disciplinary report or final summary report does not rise to the level of personal involvement necessary for liability to attach. For these reasons, the claim in Count 8 against Wills will be dismissed.

**Counts 9 and 10**

Plaintiff alleges that IDOC Director Jefferys and Warden Wills enforced a blanket policy of strip searching all segregation inmates. Strip searches that are not related to legitimate security needs or are conducted in a harassing manner in order to humiliate and inflict psychological pain, may be found unconstitutional under the Eighth Amendment. Further, even if a valid penological reason existed for the search, "the manner in which the searches were conducted must itself pass constitutional muster." *Mays v. Springborn*, 719 F.3d 631, 634, (7th Cir. 2013) (group of inmates were strip searched together, gratuitously exposing prisoners' nude bodies to each other, while guards uttered demeaning comments) (quoting *Mays v. Springborn*, 575 F.3d 643, 649 (7th Cir. 2009)); *Mays v. Springborn*, 575 F.3d 643, 649-50 (7th Cir. 2009); *Calhoun v. DeTella*, 319 F.3d 936, 939 (7th Cir. 2003) (a strip search conducted in a harassing manner intended to humiliate and inflict psychological pain could violate the Eighth Amendment); *see also Meriwether v. Faulkner*, 821 F.2d 408 (7th Cir. 1987) (allegation of calculated harassment by strip searches stated Eighth Amendment claim), *cert. denied*, 484 U.S. 935 (1987).

Plaintiff alleges that IDOC Director Jefferys and Warden Wills created and/or condoned a strip search policy at Menard that was designed to punish, harass, and humiliate segregation inmates, and not for any legitimate penological purpose. This is sufficient to state an Eighth Amendment claim and Count 9 will be permitted to proceed against IDOC Director Jefferys and Warden Wills. Plaintiff will also be allowed to proceed on the Fourth Amendment claim in Count 10 based on the same allegations. *See Henry v. Hulett*, 969 F.3d 769, 779 (7th Cir. 2020) (holding

"the Fourth Amendment protects (in a severely limited way) an inmate's right to bodily privacy during visual inspections, subject to reasonable intrusions that the realities of incarceration often demand").

### Count 11

Prison conditions violate the Eighth Amendment if they deprive inmates of basic human needs, such as food, medical care, sanitation, or physical safety. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *James v. Milwaukee Cnty.*, 956 F.2d 696, 699 (7th Cir. 1992). Eighth Amendment claims that challenge the conditions of confinement have an objective and a subjective component. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1994); *Wilson v. Seiter*, 501 U.S. 294, 302 (1991). To satisfy the objective component of this claim, the conditions must have resulted in an unquestioned and serious deprivation of basic human needs or deprived an inmate of the minimal civilized measure of life's necessities. *Rhodes*, 452 U.S. at 347. The subjective component is satisfied where the defendant acted with deliberate indifference to the inmate's health or safety. *See, e.g., Farmer*, 511 U.S. at 837; *Estelle*, 429 U.S. at 104. A prison official who acted or failed to act despite the official's knowledge of a substantial risk of serious harm from the conditions may be liable for deliberate indifference. *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992).

The Complaint offers insufficient allegations to state an Eighth Amendment claim for unconstitutional conditions of confinement.  Plaintiff makes only conclusory allegations that extended periods in segregation have caused his mental health to deteriorate and that Rowland, Wills, and Jefferys were made aware of his "conditions."  Count 11 fails to state a claim and will be dismissed.

### Request for Injunctive Relief

Plaintiff filed a Motion for Preliminary Injunction (Doc. 13) seeking release from

segregation and that he not be subject to strip searches or required to take his medication while handcuffed on his knees, which are issues related to his segregation status. A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (internal citation omitted)). A party seeking a preliminary injunction must make a threshold showing that: "(1) absent preliminary injunctive relief, he will suffer irreparable harm in the interim prior to a final resolution; (2) there is no adequate remedy at law; and (3) he has a reasonable likelihood of success on the merits." *Tully v. Okeson*, 977 F.3d 608, 612-13 (7th Cir. 2020). If the movant makes this threshold showing, the court must then consider the balance of harms between the parties and the effect of granting or denying a preliminary injunction on the "public interest." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Mandatory preliminary injunctions—those "requiring an affirmative act by the defendant"—are "ordinarily cautiously viewed and sparingly issued." *Id.* And, pursuant to the Prison Litigation Reform Act, a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2).

Injunctive relief, whether a temporary restraining order or preliminary injunction, is appropriate only if it addresses a matter presented in the underlying suit and seeks relief of the same character sought in the underlying suit. *See Daniels v. Dumsdorff*, No. 19-cv-394-NJR, 2019 WL 3322344, at *1 (S.D. Ill. July 24, 2019); *Hallows v. Madison County Jail*, No. 18-cv-881-JPG, 2018 WL 2118082, at *6 (S.D. Ill. May 8, 2018) (internal citations omitted); *see also Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) ("[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint.").

In the Complaint, Plaintiff alleges he has been in segregation since June 2020, a time that pre-dates the events that are the subject of the claims in the Complaint. Further, he states that before the disciplinary action that resulted in the additional three months that is the subject of this action, he was not due to be released from segregation until September 2021. As such, the issue that caused Plaintiff's segregation status from June 2020 to September 2021 is not before the Court. As to the issues of the strip searches and the manner in which Plaintiff is required to take his medication, he has not alleged irreparable harm that will occur without Court intervention. Although he alleges his mental health is deteriorating without his medication, it is his choice not to take the medication in the required manner (which the Court has found does not constitute deliberate indifference)). For these reasons, the motion will be denied.

## Official capacity claims

Plaintiff brings claims against each Defendant in his or her individual and official capacities. His injunctive relief claim is properly brought against IDOC Director Jefferys and Menard Warden Wills in their official capacities. However, Plaintiff's claims for monetary damages may only be pursued against state officials in their individual capacities. *Brown v. Budz*, 904 F.3d 904, 918 (7th Cir. 2005); *Shockley v. Jones*, 823 F.2d 1068, 1070 (7th Cir. 1987). Accordingly, the official capacity claims against Rhoades, Royster, Whitoff, Morris, Rowland, and Schoenbeck are dismissed without prejudice.

## Disposition

The following claims in the Complaint (Doc. 11) will proceed against the Defendants in their individual capacities: Count 1 against Rhoades; Counts 2 and 3 against Royster and Whitoff; Count 4 against Jefferys and Wills; Count 5 against Royster and Rowland; Count 6 against Morris; Count 8 against Rowland and Lt. Schoenbeck; and Counts 9 and 10 against Jefferys and Wills. To

16

the extent Plaintiff seeks injunctive relief, that claim will proceed against Jefferys and Wills in their official capacities as the IDOC Director and Menard Warden, respectively.

Count 8 is **DISMISSED without prejudice** as to Wills.  Counts 7 and 11 are **DISMISSED without prejudice** for failure to state a claim for relief.

The Motion for Preliminary Injunction (Doc. 13) is **DENIED**.

The Clerk shall prepare for Robert Rhoades, Sgt. Royster, Lt. Whitoff, C/O Morris, Joshua Schoenbeck, Major Rowland, Anthony Wills (individual and official capacities), and R. Jefferys (individual and official capacities): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons).  The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on the Defendant, and the Court will require the Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address.  This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk and shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).  Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit

Review Order.

Plaintiff is **ADVISED** that if judgment is rendered against him and the judgment includes the payment of costs under 28 U.S.C. §1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is further **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and the opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* Fed. R. Civ. P. 41(b).

Based on the allegations in the Complaint, the Clerk of Court is **DIRECTED** to **ENTER** the standard qualified protective order pursuant to the Health Insurance Portability and Accountability Act.

**IT IS SO ORDERED.**

DATED:  June 1, 2021  *s/ Staci M. Yandle*
STACI M. YANDLE
United States District Judge

**Notice to Plaintiff**

The Court will take the necessary steps to notify the Defendants of your lawsuit and serve them with a copy of your Complaint. After service has been achieved, Defendants will enter an appearance and file an Answer to your Complaint. It will likely take at least **60 days** from the date of this Order to receive the Defendants' Answer, but it is entirely possible that it will take **90 days** or more. When Defendants have filed their Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for Defendants before filing any motions, to give the Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.